**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STEWART PARK AND RESERVE COALITION
INCORPORATED (SPARC); ORANGE COUNTY
FEDERATION OF SPORTSMEN'S CLUBS, INC.;
and SIERRA CLUB,

Plaintiffs,

Civ. No. 1:00-CV-1606
- v -
(RFT)

RODNEY E. SLATER, as United States Secretary of
Transportation; UNITED STATES DEPARTMENT OF
TRANSPORTATION; KENNETH R. WYKLE, as
Administrator of the Federal Highway Administration;
HAROLD J. BROWN, as New York Division Administrator
of the Federal Highway Administration; FEDERAL HIGHWAY
ADMINISTRATION; LOUIS R. TOMSON, as Chairman of the
New York State Thruway Authority; NEW YORK STATE
THRUWAY AUTHORITY; JOSEPH H. BOARDMAN, as
Commissioner of the New York State Department of
Transportation; and NEW YORK STATE DEPARTMENT
OF TRANSPORTATION,

Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

CAFFREY & FLOWER                                   JOHN W. CAFFRY, ESQ.
Attorney for Plaintiffs
100 Bay Street
Glens Falls, New York 12801

HON. GLENN T. SUDDABY                              BARBARA D. COTTRELL, ESQ.
United States Attorney for the                     Assistant United States Attorney
Northern District of New York
Attorney for Federal Defendants
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

HON. ELIOT SPITZER                                 LISA M. BURIANEK, ESQ.
Attorney General for the State of New York         Assistant Attorney General

Attorney for State Defendants
New York State Department of Law
Environmental Protection Bureau
The Capitol
Albany, New York, 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM DECISION AND ORDER[1]

Once again this Court is being called upon to render a Decision in this action.  Familiarity

with the facts of this case is presumed.[2]  Presently pending before the Court are three Motions from

Plaintiffs, specifically, a Motion for Reconsideration, pursuant to FED. R. CIV. P. 60(b)(2) & (3), a

Motion to Alter or Amend Judgment, pursuant to FED. R. CIV. P. 59(e), and a Motion for a Stay

Pending Appeal, pursuant to FED. R. APP. P. 8(a).  Dkt. Nos. 123 & 129.  Both the State and Federal

Defendants jointly oppose Plaintiffs' Motions.  Dkt. No. 131.  For the following reasons, Plaintiffs'

---

[1] On February 13, 2002, in accordance with 28 U.S.C. § 636(c) and N.D.N.Y.L.R. 72.2, the parties consented to have the undersigned conduct any and all further proceedings in the case, including the entry of final judgment.  Dkt. No. 24.

[2] For ease of reference, the Court will utilize the following abbreviated citations and document references as employed in the previous decisions:

A.  Prior Decisions
1.  Dkt. No. 71, *Stewart Park and Reserve Coalition, Inc. v. Slater (SPARC I)*, 225 F. Supp. 2d 219 (N.D.N.Y. 2002);
2.  Dkt. No. 85, *Stewart Park and Reserve Coalition, Inc. v. Slater (SPARC II)*, 232 F. Supp. 2d 1 (N.D.N.Y. 2002);
3.  Dkt. No. 98, *Stewart Park and Reserve Coalition, Inc. v. Slater (SPARC III)*, 352 F.3d 545 (2d Cir. 2003);
4.  Dkt. No. 119, *Stewart Park and Reserve Coalition, Inc. v. Slater (SPARC IV)*, 358 F. Supp. 2d 83 (N.D.N.Y. 2005).

B.  Prior Abbreviations
1.  New York State Department of Transportation—NYSDOT;
2.  New York State Department of Environmental Conservation—NYSDEC;
3.  New York State Thruway Authority—NYSTA;
4.  Final Environmental Impact Statement—FEIS;
5.  Federal Highway Administration—FHWA or Secretary;
6.  United States Corp of Engineers—CORP;
7.  National Environmental Policy Act, 5 U.S.C. § 706—NEPA;
8.  New York's State Environmental Quality Review Act, N.Y. ENVTL. CONSERV. LAW art 8— SEQRA.

Motions are **denied**.

The Court finds it prudent, and accordingly accepts the invitation of the parties, to address the complex and somewhat anomalistic procedural history of this case.  Specifically, a concern has been raised as to what, if any, jurisdiction this Court retained over this action after the Second Circuit issued its Mandate on the appeal of this Court's prior Memorandum Decision and Order, dated September 30, 2002.  *See* Dkt. No. 71, *SPARC I*, 225 F. Supp. 2d 219 (N.D.N.Y. 2002) & Dkt. No. 98, *SPARC III*, 352 F.3d 545 (2d Cir. 2003).  Since an appeal is currently pending of this Court's most recent Memorandum Decision and Order, dated February 25, 2005 (*SPARC IV*, 358 F. Supp. 2d 83 (N.D.N.Y. 2005)), a clarification of the jurisdictional basis for our last Decision, and this Decision, is warranted.

## I.  PROCEDURAL HISTORY

Initially, we note that this action at all times has been equitable in nature, that is, from the outset, Plaintiffs sought only declaratory and injunctive relief from the Court.  To be more specific, Plaintiffs initiated this action seeking (1) a declaration that Defendants failed to comply with state and federal environmental and transportation laws; (2) a mandatory injunction requiring Defendants to comply with the federal and state laws; and (3) an injunction requiring Defendants to revoke their approval of the Stewart Airport [expansion] project and the FEIS and prohibiting any further development of the project.  Dkt. No. 2, Am. Compl.  The fact that this action is equitable is significant, as explained more fully below, with regard to the Mandates of the Second Circuit and this Court retaining jurisdiction over this action.

On September 30, 2002, this Court issued a Memorandum Decision and Order granting Defendants' Motion for Summary Judgment, denying Plaintiffs' Cross-Motion for Summary

Judgment, and directing the Clerk of the Court to enter Judgment for all Defendants and close the file; a Judgment was accordingly issued that same date.  Dkt. No. 71, *SPARC I*; Dkt. No. 72, Judgment.  On October 25, 2002, Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Second Circuit regarding this Court's September 30th Decision.  Dkt. No. 76. Simultaneously, in accordance with Federal Rule of Appellate Procedure 8(a), Plaintiffs filed a Motion with this Court seeking multiple relief, namely, (1) a stay of execution of this Court's Judgment pending a determination on appeal; (2) an injunction barring Defendants from proceeding with construction, destruction, or any further development regarding the interchange and Stewart Airport; (3) a waiver of the requirement of a *supersedeas* bond; and (4) a temporary restraining order pending this Court's determination on the motion for a stay/injunction.[3]  Dkt. Nos. 73-75 & 81.  Defendants opposed the Plaintiffs' Motions.  Dkt. Nos. 77-80 & 83.

On November 21, 2002, this Court issued a Memorandum Decision and Order, (1) granting Plaintiffs' Motion for a Stay and Injunction pending appeal to the Second Circuit; (2) enjoining the Defendants from "proceeding with construction, destruction, or any further development regarding the I-84 and I-87 Interchanges and Stewart Airport" pending a decision on the appeal; (3) granting Plaintiffs' Motion to waive the *supersedeas* bond requirement; and (4) denying Plaintiffs' Application for a Temporary Restraining Order as moot.  Dkt. No. 85, *SPARC II*, 232 F. Supp. 2d 1 (N.D.N.Y. 2002).  On December 9, 2002, by Order to Show Cause, the State Defendants sought reconsideration of the November 21st Decision and an order vacating the stay pending appeal (Dkt. No. 86), which Plaintiffs opposed (Dkt. Nos. 89-90).  The State Defendants also filed a Notice of

_____

[3]  Prior to that application, it appears that Plaintiffs had never sought a temporary restraining order from the Court notwithstanding the fact that their Amended Complaint sought injunctive relief.

Appeal to the Second Circuit regarding our November 21st Decision.  Dkt. No. 91.  On December

23, 2002, in ruling on the Motion for Reconsideration, this Court modified the November Order

only to the extent we mistakenly enjoined construction of the I-84/I-87 Interchanges when the

subject of the litigation is solely the I-84/Drury Lane Interchange.  Dkt. No. 93.  All other relief

sought was denied.  *Id*.  On December 27, 2002, the State Defendants filed a Notice of Appeal to the

Second Circuit of that Decision.[4]  Dkt. No. 94.

On May 18, 2004, the Second Circuit issued its Mandate regarding the appeal of this Court's

September 30th Decision.  Dkt. No. 98, *SPARC III*.[5]  In reviewing this Court's September 30th

Decision, the Second Circuit reversed our Judgment for Defendants only "to the extent [the district

court] declared that the Defendants were not required to perform the analysis set forth in Section

4(f) before approving construction of the interchange[.]" *Id*. at 562.  In this regard, the Second

Circuit remanded the case back to this Court with instructions "to enter judgment for Plaintiffs with

respect to [the 4(f)] issue and to remand to the Secretary of Transportation for further proceedings

consistent with [the Second Circuit's] opinion for the purpose of conducting the analysis required by

Section 4(f)." *Id*.  In all other respects, the Decision of this Court was upheld.  *Id*.

## II.  JURISDICTION AFTER *SPARC III*

In reviewing the Second Circuit's Mandate, this Court made the following interpretations.

---

[4]  After oral argument before the Second Circuit, the stay and preliminary injunction issued by this Court was continued and the Defendants withdrew their cross appeals.

[5]  The Second Circuit's Decision is dated December 12, 2003 (*SPARC III*), however, the Mandate was not issued by that Court until May 18, 2004, and was not received or docketed by the District Court until May 24, 2004.  According to Federal Rule of Appellate Procedure 41(c), an appellate mandate is effective when issued.  Fed. R. App. P. 41(c).  According to the Advisory Committee Notes for the 1998 Amendments, which added subdivision (c), "[a] court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." *Id*.  Advisory Committee Notes 1998 Amendments.

First, with regard to the direction to enter a judgment for Plaintiffs on the 4(f) issue, we determined that, in light of the equitable relief initially sought by Plaintiffs in this action, a judgment for Plaintiffs on the 4(f) issue meant a declaration that the Defendants violated 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303, and the injunction we previously granted pending appeal would remain in place thereby precluding the Defendants from proceeding with construction of the Drury Lane/I-84 Interchange project.  Second, with regard to the Circuit's direction for this Court to remand the 4(f) issue to the Secretary of Transportation for further proceedings, it was this Court's understanding that pending further review by FHWA, the aforementioned injunction would remain in place and this case would remain open in District Court.

Inadvertently, this Court failed to enter an actual judgment for the Plaintiffs as directed.  Had we issued a judgment for Plaintiffs, the judgment would have encompassed the above interpretations, that is, we would have had the Secretary of Transportation resubmit the 4(f) analysis, as mandated by the Second Circuit, to this Court for further review, which would have kept this action open and under this Court's jurisdiction.  We believe this is a proper interpretation of the Second Circuit's Mandate in light of judicial economy and in the interest of rendering a final resolution to this matter.  Had we not envisioned keeping the case open in District Court, the parties would have been immobilized unless and until one of the parties initiated a new plenary proceeding in District Court; invariably and logically, such new action would seek to remove the hindrance preventing them from going forward with the construction project, namely, the injunction.  Neither the Court nor the parties viewed the Mandate as requiring closure and successive litigation.  Had that been true, we believe the Second Circuit would have specifically stated such.

A contributing reason why this Court was distracted from filing a judgment for the Plaintiffs,

though by no means are the parties blameworthy, was the parties' quick inquest as to this Court's

jurisdiction over the case after the Second Circuit's Mandate.  Approximately two weeks or so after

the Second Circuit's Mandate was issued and docketed by the Clerk of this Court, we received

correspondence, dated June 7, 2004, from Lisa Burianek, Assistant Attorney General (AAG) and

counsel for the State Defendants.  Dkt. No. 99.  By her correspondence, AAG Burianek sought a

conference with the Court and all parties to discuss the status of this case.  *Id.*  Accordingly, a

telephone conference was held on June 17, 2004, and it became apparent that all parties concurred

with this Court's interpretation of the status of the action after the Second Circuit's Directives.  It

was revealed at that conference that even though this Court had not yet had an opportunity to

officially enter a judgment for the Plaintiffs on the docket and officially remand the 4(f) issue to

FHWA for further proceedings, FHWA had already engaged and completed what Defendants

believed complied with the Second Circuit's Directives.[6]  Notwithstanding this Court's inadvertence

in officially entering judgment for Plaintiffs, all parties believed that an injunction was in place

barring further construction.  It was therefore decided, upon the consensus of the parties, that in

order for the Court to review the actions taken by the Secretary a motion to vacate the stay and

injunction should be filed.  A briefing schedule was established, which was twice amended at the

request of the parties (Dkt. Nos. 107 & 109), with regard to exchange of certain discovery and

motions.  Subsequently, the Defendants filed their Motions to Vacate the Stay and Injunction (Dkt.

Nos. 102 & 103), which Plaintiffs opposed (Dkt. No. 110).

On February 11, 2005, the Court heard Oral Arguments on the matter (Dkt. No. 118) and a

---

[6] Indeed, the Court was later provided, as an Exhibit to the Defendants' Motion to Vacate, with a Section 4(f) Administrative Analysis which had been completed on or about April 29, 2004.  Dkt. No. 102, Ex. 1.

Memorandum Decision and Order was issued by this Court on February 25, 2005 (Dkt. No. 119,

*SPARC IV*).  In reviewing the further proceedings completed by the Secretary, this Court found that

the Secretary complied with the Second Circuit's Directives as well as the transportation laws.

*SPARC IV*, 358 F. Supp. 2d at 105.  Accordingly, we granted Defendants' Joint Motion to lift the

Stay and Injunction.  *Id*.  Due to clerical error, a Judgment for Defendants was not issued until April

21, 2005.  Dkt. No. 128.  On March 23, 2005, prior to the Judgment being entered by the Clerk of

the Court, Plaintiffs filed a Notice of Appeal to the Second Circuit regarding this Court's February

25th Decision.  Dkt. No. 120.  Then, on April 19, 2004, in accordance with Federal Rule of

Appellate Procedure 8(a), Plaintiffs filed a "Motion for a Stay Pending Appeal, for Injunctive

Relief, and Waiver of *Supersedeas* Bond" and, pursuant to Federal Rule of Civil Procedure 60(b), a

Motion to Reconsider the February 25th Decision on the grounds, *inter alia*, that the Court was

provided with false information at Oral Argument.  Dkt. No. 123.  After a Judgment for Defendants

had been docketed by the Clerk of the Court, Plaintiffs filed a Motion to Alter or Amend Judgment

pursuant to Federal Rule of Civil Procedure 59.  Dkt. No. 129.  Defendants jointly oppose all of

Plaintiffs' current Motions.  Dkt. No. 131.

## III.  JURISDICTION OVER PLAINTIFFS' CURRENT MOTIONS

Before we review the substance of Plaintiffs' current Motions, we must assess the Court's

jurisdictional basis to entertain the Motions in light of the timing of the filing of Plaintiffs' Notice of

Appeal and their Motions.

### A.  Plaintiffs' Rule 60(b) Motion[7]

Federal Rule of Civil Procedure 60(b) lists six grounds for seeking reconsideration of a

---

[7]  *See infra* Part IV.A (discussing standard of review).

court's order or judgment.  While Plaintiffs fail to specifically reference under which of the six subdivisions they seek relief, they do state that the basis for their Reconsideration Motion is that the Court was presented with false evidence and, in turn, erroneously relied upon such evidence in resolving the Defendants' Joint Motion to Vacate the Stay/Injunction.  Dkt. No. 123.  Plaintiffs further state that newly discovered evidence, which could not have been diligently discovered prior to either Oral Argument or this Court's February Decision, contradicts the "false evidence" submitted to the Court at Oral Argument and, therefore, warrants reconsideration of this Court's prior Order vacating the Injunction.  *Id*.  Based upon such arguments, it appears to this Court that Plaintiffs seek reconsideration under ground three, which includes fraud, misrepresentation, or other misconduct of an adverse party, and perhaps to some extent ground two as well, which includes newly discovered evidence, though the Plaintiffs are not seeking a "new trial," but rather, seek to maintain the Injunction vacated by this Court.

We first address the timeliness of Plaintiffs' Motion for Reconsideration.  Under this District's Local Rules, "[m]otions for reconsideration or reargument, *unless otherwise governed by Fed. R. Civ. P. 60*, may be served no later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order, or decree."  N.D.N.Y.L.R. 7.1(g) (italicisation added for emphasis) (all other alterations in original).  Here, the potential grounds Plaintiffs seek relief under are specifically covered by the one-year limitation period set forth in Rule 60.  *See* FED. R. CIV. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), *not more than one year after the judgment, order, or proceeding was entered or taken*." (emphasis added)).  Therefore, though filed more than fifty days after the entry of the Order, Plaintiffs' Motion for Reconsideration was timely filed.

Our inquiry as to whether we may properly address Plaintiffs' Motion for Reconsideration does not end there. We must also address the fact that, prior to Plaintiffs' filing their Motion for Reconsideration, Plaintiffs filed a Notice of Appeal to the Second Circuit. Thus, we must assess whether the filing of that Notice divested this Court of the authority to entertain the Reconsideration Motion.

As a general rule, the filing of a timely notice of appeal divests a district court of jurisdiction over the action. *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (*per curiam*) ("[T]his circuit has repeatedly held that the docketing of a notice of appeal 'ousts the district court of jurisdiction, except insofar as it is reserved to it explicitly by statute or rule.'" (quoting *Ryan v. United States Line Co.*, 303 F.2d 430, 434 (2d Cir. 1962)); *see also United States v. Camacho*, 302 F.3d 35, 36 (2d Cir. 2002) (*per curiam*) ("[T]he filing of a notice of appeal normally 'divests the district court of [jurisdiction] over those aspects of the case involved in the appeal.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *Burda Media, Inc. v. Blumenberg*, 2005 WL 323712, at *2 (S.D.N.Y. Feb. 8, 2005); *Thompson v. County of Franklin*, 180 F.R.D. 216, 219 (N.D.N.Y. 1998). However, the Second Circuit has stated that a district court may ***entertain*** and ***deny*** a Rule 60(b) motion filed during the pendency of an appeal without disturbing the jurisdiction of the Court of Appeals. *Toliver v. County of Sullivan*, 957 F.2d at 49. The Second Circuit has made plain, however, that "the district court may *grant* a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court." *Id.* (emphasis in original); *accord King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002) (cited in *Burda Media, Inc. v. Blumenberg*, 2005 WL 323712, at *2).

In the case at bar, and as explained more fully below, because this Court denies Plaintiffs'

Motion for Reconsideration, we may properly do so without disrupting the Court of Appeals' jurisdiction and without first obtaining permission from that Court. *See Toliver v. County of Franklin*, 957 F.2d at 49 (only when the district court decides in favor of reconsideration is it necessary to seek a remand from the Court of Appeals).

### B. Plaintiffs' Rule 59(e) Motion[8]

According to the Federal Rules of Civil Procedure, a motion to alter or amend a judgment "shall be filed no later than 10 days after the entry of judgment." FED. R. CIV. P. 59(e). As stated above, after Judgment was entered for Defendants and the action was deemed closed, the Plaintiffs amended their Rule 60(b) Motion to include a Rule 59(e) Motion in the alternative. In accordance with Federal Rule of Appellate Procedure 4(a)(2), Plaintiffs' Notice of Appeal filed on March 23, 2005, prior to the Entry of Judgment, is deemed filed on the date such Judgment was entered, namely April 21, 2005. Again, this Court must address whether we have the jurisdiction to entertain Plaintiffs' Rule 59(e) Motion.

First, as to the timeliness of this Motion, as noted above, the Judgment was entered on April 21, 2005, and Plaintiffs filed their Rule 59(e) Motion on May 2, 2005. *See* Dkt. Nos. 129, Pls.' Notice of Motion, & 128, Judgment. In accordance with the time computation guidelines set forth in Federal Rules of Civil Procedure 6 and 59(e), we find that Plaintiffs' Rule 59(e) Motion was timely filed.[9]

---

[8] *See infra* Part IV.B (discussing standard of review).

[9] As stated above, a motion filed pursuant to Rule 59(e) must be filed no later than ten days after entry of judgment. FED. R. CIV. P. 59(e). Rule 6 further notes that,

[i]n computing any period of time . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included. . . . [and] [w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the

Second, notwithstanding the timeliness of the filing of the 59(e) Motion in District Court, we must again determine whether the filing of the Notice of Appeal prior to filing the Rule 59(e) Motion ousts this Court of jurisdiction to entertain those issues currently on appeal to the Second Circuit.  Pursuant to Federal Rule of Appellate Procedure 4(a)(4), when a notice of appeal is filed <u>after</u> announcement or entry of judgment but <u>before</u> disposition of a post-judgment motion, the appeal is held in abeyance pending the district court's disposition of the post-judgment motion. FED. R. APP. P. 4(a)(4)(B)(I) (stating that under such circumstances, the prior filed notice of appeal does not become <u>effective</u> until "the order disposing of the last such remaining motion is entered[]").  While this appellate rule does not exactly cover the situation at hand, given that, in our case, the Notice of Appeal was filed **<u>prior to</u>** Judgment as well as the filing of the Rule 59(e) Motion, courts in this Circuit, as well as other Circuit Courts of Appeals, have found that, under such circumstances, application of Appellate Rule 4 effectively renders the appeal to the Court of Appeals in abeyance pending the district court's determination of the post-judgment motion.  *See, e.g.*, *Woodward v. Hardenfelder*, 845 F. Supp. 960, 964-66 (E.D.N.Y. 1994) (citing to the holding in *Burt v. Ware*, 14 F.3d 256 (5th Cir. 1994), stating that the new Rule 4(a)(4) would be applied retroactively wherein plaintiff's appeal to the circuit court would remain dormant until the lower court ruled on the post-judgment motion).  Such interpretation is substantiated by the fact that, prior to the implementation of the 1993 Amendments, a timely Rule 59(e) motion filed ***after*** the filing of a notice of appeal rendered the appeal a nullity and the district court retained jurisdiction to hear the post-judgment motion.  *Parkus v. Delo*, 985 F.2d 425, 426 (8th Cir. 1993) (dismissing an appeal as

---

computation.
FED. R. CIV. P. 6(a).

premature and for want of jurisdiction due to the fact that the Rule 59(e) motion was still pending in

the district court, even though such motion was filed after the notice of appeal).  Indeed, the

Advisory Committee Notes accompanying the 1993 Amendments to Rule 4 support this notion: "A

notice filed before the filing of one of the specified motions or after the filing of a motion but before

disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the

previously filed notice effectively places jurisdiction in the court of appeals." FED. R. APP. P. 4,

Advisory Committee Notes 1993 Amendments.  Technically then, the Notice of Appeal filed in this

case was filed prior to this Court rendering a disposition on the post-judgment motion, and,

therefore, the appeal is ineffective.  Since the appeal is ineffective, the Second Circuit does not have

jurisdiction to act on the appeal prior to this Court disposing of the post-judgment motions.[10]  *See,*

*e.g.*, 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.32[3] (3d ed. 2005).

Following this logic through, it cannot be gainsaid that this Court has the jurisdiction to entertain the

Rule 59(e) Motion.

## IV.  STANDARD OF REVIEW

### A.  Rule 60(b) Standard

Rule 60(b) sets forth the following six grounds upon which a court can grant relief from a

judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence
> which by due diligence could not have been discovered in time to move for a new trial
> under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5)
> the judgment has been satisfied, released, or discharged, or a prior judgment upon which
> it is based has been reversed or otherwise vacated, or it is no longer equitable that the

---

[10]  At Oral Argument for the Plaintiffs' Rules 59 and 60 Motions, it was represented to the Court that indeed the
Second Circuit has held the appeal in abeyance pending this Court's determination of the post-judgment motions.

judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b).

"In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. United States Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citation omitted). Moreover, Rule 60(b) motions are left to the sound discretion of the district judge. *See Nat'l Petrochemical Co. of Iran v. The M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) (holding that "[a] motion to vacate a judgment under Fed. R. Civ. P. 60(b) is addressed to the sound discretion of the trial court . . . ." (citations omitted)). "To prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that he was justifiably ignorant of the newly discovered evidence despite due diligence." *Adams v. Intralinks, Inc.*, 2005 WL 427878, at *3 (S.D.N.Y. Feb. 22, 2005) (quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004)). "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case. *Adams v. Intralinks*, 2005 WL 427878, at *3 (quoting, *inter alia*, *State St. Bank & Trust Co.*, 374 F.3d at 178).

## B.  Rule 59(e) Standard

Reconsideration of a court's judgment pursuant to 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *USA Certified Merchants, LLC v. Koebel*, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003) (citations omitted). "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Atl. States Legal Found.,*

*-14-*

*Inc. v. Karg Bros., Inc.*, 841 F. Supp. 51, 53 (N.D.N.Y. 1993) (quoting *Larsen v. Ortega*, 816 F.

Supp. 97, 114 (D. Conn. 1992)); *see also Oxford House, Inc. v. City of Albany*, 155 F.R.D. 409, 410

(N.D.N.Y. 1994).  "The standard for granting a Rule 59(e) motion is strict and reconsideration is

generally denied as Rule 59(e) motion is not a vehicle for reargument or asserting arguments that

could and should have been made before judgment issued."  *Weiss v. City of New York*, 2003 WL

21414309, at *1 (S.D.N.Y. June 19, 2003) (internal quotation marks and citations omitted); *see also*

12 MOORE'S FEDERAL PRACTICE § 59.30[6].

When the basis of a 59(e) motion is the discovery of new evidence, the moving party bears

the burden in establishing that the new evidence is "truly newly discovered or . . . could not have

been found by due diligence."  *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d

Cir. 1983) (cited in *Atl. States Legal Found., Inc. v. Karg Bros., Inc.*, 841 F. Supp. at 56); *see also*

*Patel v. Lutheran Medical Center, Inc.*, 775 F. Supp. 592, 596 (E.D.N.Y. 1991) ("Whether moving

on the basis of presentation of new evidence under Rule 59(e) or Rule 60(b)(2), the standard for

'newly discovered evidence' is the same.") (citing C. WRIGHT AND A. MILLER, 11 FEDERAL

PRACTICE AND PROCEDURE 182, § 2859 (1973 ed.) ("The same standard applies to motions on the

ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2), and

decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2).")).  In this

regard, evidence which was "in the possession of the party before the judgment was rendered . . . is

not newly discovered and does not entitle him to relief."  *Patel v. Lutheran Medical Center, Inc.*,

775 F. Supp. at 596 (citing, *inter alia*, *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493

(2d Cir. 1983)); *see also Oxford House, Inc. v. City of Albany*, 155 F.R.D. at  410 ("Rule 59(e)

motions are not vehicles for bringing before the court theories or arguments that were not advanced

*-15-*

earlier.  Nor may the motion present evidence which was available but not offered at the original . . . trial.") (citation omitted).

With regard to the third ground, that there is a clear error of law or to prevent manifest injustice, litigants are forewarned that "any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Oxford House, Inc. v. City of Albany*, 155 F.R.D. at  410 (citation omitted).

## C.  Stay/Injunction Standard

To determine whether a party is entitled to a stay pending appeal, the movant must demonstrate: (1) a strong likelihood of success on the merits; (2) irreparable injury absent a stay; (3) lack of injury to the other parties if a stay is granted; and (4) where the public interest lies.  *See Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987); *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002); *see also SPARC II*, 232 F. Supp. 2d at 2-3.  Further, with regard to a request to waive the filing of a *supersedeas* bond, "[b]ecause a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment."  *Palazzetti v. Morson*, 2002 WL 562654 at *3 (S.D.N.Y. Apr. 16, 2002) (citations omitted) (quoted in *de la Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003)).

## V.  DISCUSSION

Plaintiffs encompassed in all Motions various points, which they believe warrant reconsideration of the Court's February Decision.  The Court will address each point *seriatim*.

POINT I:
*The Court Applied the Correct Standard of Review*

The Plaintiffs charge that this Court, when reviewing the Defendants' 4(f) Analysis, applied the wrong standard of review.  In reviewing what the Defendants performed in order to comply with the Mandates from the Second Circuit, this Court concluded that we were reviewing an agency decision, not an interpretation of the statute, and, was therefore governed by the Administrative Procedure Act's "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" standard.  *SPARC IV*, 358 F. Supp. 2d at 93-95; *see also* 5 U.S.C. §§ 701, *et seq*.  Plaintiffs argue that what the Defendants actually did was interpret their enabling statute and, as such, this Court should have applied the stricter standard of review, that is, whether the Defendants' "interpretation of the statute" was reasonable and not at odds with the plain language of the statute.  Dkt. No. 124, Pls.' Mem. of Law at pp. 5-6.

In opposing Defendants' Motion to Vacate, the Plaintiffs already argued what standard of review should be applied and the Court finds that neither Rule 59 nor 60 contemplate utilization of such procedures for reargument.  *See supra* Part IV.  The Court has already considered Plaintiffs' arguments regarding which standard we are guided by in reviewing agency decisions, and, therefore find Plaintiffs' attempts to reargue or relitigate these points inappropriate.  However, to the extent we construe Plaintiffs' Motions as based in part on an argument that the Court misapplied the law, the Court finds it prudent to clarify the standard previously applied.  In this regard, we disagree with the Plaintiffs' rendering of what has occurred and what standard of review shall apply, as we did when issuing *SPARC IV*.

This Court's scope of review of the Defendants' last series of actions and determinations do

not encompass an interpretation of constitutional and statutory provisions.  5 U.S.C. § 706.  Rather,

our responsibility here is

> to hold unlawful and set aside agency action, findings, and conclusions found to be
>
> > **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > **(B)** contrary to constitutional right, power, privilege, or immunity;
> > **(C)** in excess of statutory jurisdiction, authority, or limitation, or short of statutory rights;
> > **(D)** without observance of procedure required by law;
> > **(E)** unsupported by substantial evidence . . .; or
> > **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

*Id*. at § 706(2).

To make crystal clear what confronted the Court, we reiterate the following:

> [A]fter being mandated to do so by the Second Circuit, [Defendants] have, in effect, conducted a Section 4(f) analysis, and, based upon their review of the previous Project plans, the statute and corresponding rules and regulations and consultations with various state and federal agencies, they have modified said Project to create a feasible and prudent alternative to **using** a portion of the Stewart Buffer Lands designated for recreational use . . . [by moving] the planned four lane improvements of Drury Lane thirty feet east of the existing Drury Lane thereby **completely avoiding any use** of designated "parklands" located west of Drury Lane. . . .  However, the Project continues to include wetland mitigation construction within the Stewart State Forest as provided by the 1999 land transfer agreement between NYSDOT and NYSDEC. . . . [B]ased upon this **avoidance** modification . . . both NYSDOT and FHWA concluded that a Section 4(f) determination was inapplicable.

*SPARC IV*, 358 F. Supp. 2d at 95 (emphasis added) (internal citations omitted).

It is more than reasonable and within the plain language of the statute that if there is no "use" of the

parkland a complete 4(f) review is not required.  A 4(f) review is demanded when there is a "use" of

a parkland which would then require FHWA to determine whether prudent and feasible alternatives

exist, and if none exist, how they would minimize the harm.  49 U.S.C. § 303(c).  However, since

the Defendants commenced a 4(f) Analysis and realized during the course of their analysis that by

moving the Project thirty feet east they avoided using the "parkland," they concluded at that juncture that no further aspects of a 4(f) review should occur since there would be no **use** of the parkland.  In essence, such determination was an agency decision governed by its Rules and Regulations, and not an interpretation of a statute.  Therefore, the 4(f) Analysis became subject to the Administrative Procedure Act's (APA) arbitrary and capricious standard.  *See* 5 U.S.C. § 704.  Furthermore, as discussed below, the wetland mitigation was not a "use" which would trigger a full 4(f) review either.  *See infra*, Part V.POINT II.

Notwithstanding the determination that there would not be any "use" of the parkland, with the exception of holding public hearings, this 4(f) Analysis would have constituted a complete review anyhow because at the very core of the Defendants' 4(f) Analysis are conclusions based upon the facts confronting the agency.[11]  Under these circumstances, it is the Defendants' actions and decisions that need to be placed under the Court's microscope to determine if they will survive a scrutiny contemplated by APA, and neither the Defendants's nor this Court's interpretation of a statute is at hand.  As we stated in *SPARC IV*,

> [s]ince there is no "use," as defined by 23 C.F.R. § 771.135, the need for a 4(f) review is obviated.  However, and contrary to the Plaintiffs' perspective, the Defendants have conducted a 4(f) review arriving at exactly the same conclusions that, under the current proposal, a full blown 4(f) review is unnecessary.  Yet, the review performed by the Defendants is thorough and complete, based upon all of the relevant facts, and the determinations made by FHWA are not arbitrary, capricious nor unreasonable, do not constitute an abuse of discretion nor a clear error of judgment, and was conducted in accordance with the law and observing the required procedures.

358 F. Supp. 2d at 105 (citation omitted).

---

[11]  In some respect, the Plaintiffs agree with the legal proposition that agency findings based upon facts, such as "whether the realignment of the road to the east of Drury Lane did not touch the property west of Drury Lane or Crestview Lake . . ., or whether there would be no constructive use of the properties west of Drury Lane based on noise, aesthetic effects, vibration or ecological intrusion," are subject to the more deferential standard of arbitrary and capricious.  Pls.' Mem. of Law at pp. 5-6.  That is exactly what has occurred in this final review, a review of the facts.

We wish to also add this perspective to clarify the point.  This 4(f) Analysis is distinguishable from the agency's previous conclusion that a 4(f) review was not necessary pursuant to the notion that the Stewart Buffer Lands was not a park.  Here we have an actual analysis.  The prior agency decision pertained in part to what constitutes a parkland and, as found by the Second Circuit, such decision, as we now know, was an interpretation of the statute.  *SPARC III*, 352 F.3d at 554-57.  Since 49 U.S.C. § 303 does not delineate between permanent and temporary parklands for protection under the statute, the Second Circuit found that the Defendants' prior determination that these lands were not established parklands under the statute was not reasonable nor within the plain language of the statute.  *Id*. at 555 ("The text of Section 4(f) contains no requirement that the public parklands to which it applies be permanently designated as such, and we decline judicially to engraft such a requirement on the statute, given the Congressional policy expressed in the statute that parklands be afforded heightened protection.").  To this extent, and deserving reiteration, if the Defendants' actions and decisions are deemed an interpretation of 49 U.S.C. § 303, then this Court finds such interpretations to be reasonable and "not at odds with the plain language of the statute itself," thereby deserving of deference.  *Id*. at 554.  The Defendants' conclusion to commence a 4(f) review and subsequently terminate the balance of the process prior to the completion of every step, such as holding a public hearing, after determining that moving the construction of Drury Lane east thirty feet did not constitute a "use," is not unreasonable but based upon common sense.  If there is no "use" then there is no need to weigh the two prong factors or to conduct public hearings.  The review under 4(f) would have to continue only where there is a determination that a "use" would occur.  Similarly, to conclude that the Wetland Mitigation is not a "use" or at best is a temporary use is reasonable and not at odds with the statute.  The corresponding Rules and Regulation which have

codified that a temporary use is not a use under the statute is reasonable and not at odds with the plain language of the statute. *See* 23 C.F.R. § 771.135(p).

In the final analysis, under either standard, the Court is unpersuaded by Plaintiffs' arguments and further finds that the Plaintiffs do not have a strong basis in either fact or law on this issue. Accordingly, to the extent Plaintiffs seek Reconsideration or Alteration of our previous Decision based upon the standard of review applied, such Motions are **denied**.

POINT II:
*The Wetland Construction is not a Use Under 4(f)*

The Plaintiffs complain that the Court in *SPARC IV* erred in finding that the Wetland Mitigation was not a "use" regulated under 4(f). In fact, Plaintiffs submit that this Court committed factual errors on three separate accounts. Pls.' Mem. of Law at p. 7. In this regard, Plaintiffs' Motion for Reconsideration or Alteration of our Decision on this ground is an inappropriate attempt to reargue or relitigate points already considered by this Court. Furthermore, what the Plaintiffs fail to consider is that the Defendants made the factual conclusions, not the Court, and it was our responsibility to determine if those factual findings and determinations were arbitrary, capricious, or an abuse of discretion, which we found they were not.

Throughout the review, the Defendants have been steadfast in their assertion that the Wetland Mitigation was not a "use," and we agree. However, the Court discussed at considerable length, *assuming arguendo*, that if there was a "use," it was a temporary use, at best, which, in the view of the statute and the agency's Regulations, was not a "use" that required further analysis in order to minimize a harm. *SPARC IV*, 358 F. Supp. 2d at 99-103; Gorton II at ¶¶ 5-7; *see also* 23 C.F.R. § 771.135(p)(7). But what the Court failed to do, which it will do so now, is focus on

*-21-*

another paramount reason why the Wetland Mitigation is not a "use" which would require a full blown 4(f) review.

On March 4, 1999, NYSDEC made an application for the transfer of jurisdiction of Stewart State Forest, which was granted pursuant to New York's Environmental Conservation Law. *See* N.Y. ENVTL. CONSERV. § 9-0501; Dkt. No. 102, Ex. 1, Attach. # 10.  This transfer was subject to NYSDOT's excepting lands for, *inter alia*, wetland creation and/or enhancement as mitigation for wetland impacts.  Dkt. No. 102, Ex. 1, Attach. # 10, at Sheet One.  From that day forward, NYSDEC has had full and complete management control over Stewart State Forest and its determination as to what may occur dominates.  Defendants took all of this into account when it conducted their 4(f) Analysis:

> With respect to the express reservation in the 1999 jurisdiction transfer, wetlands mitigation construction will be done in an area of the Stewart State Forest that was formerly a wetland.  The mitigation at this site will primarily consist of re-grading, placement of wetland topsoil, and wetland planting.  The restored wetland will be consistent with and/or enhance the Stewart State Forest and current outdoor uses. **NYSDOT has coordinated with NYSDEC and obtained a DEC permit for the proposed wetlands construction. Accordingly, it is our determination that 4(f) does not apply to the re-establishment of wetlands within the Stewart State Forest**. **See 23 CFR 771.135(D**).

Dkt. No. 102, Ex. 1, Section III.A (emphasis added).

Viewed another way, the CORP and NYSDEC, the federal and state agencies who, under statute, administer the lands in issue, after a rigorous review process which went unchallenged, granted Permits to the Defendants to pursue this Wetland Mitigation, with a confirmed and concurrent view that this portion of the parkland would not be harmed, but rather enhanced.[12]

---

[12]  In conjunction with obtaining the Permits, the Defendants entered into a Use and Occupancy Agreement with NYSDEC for the sole purpose of the Wetland Mitigation.  Said Agreement is revocable if the Defendants failed to comply with the Mitigation and/or adversely impact on NYSDEC's administration of the project site.  Dkt. No. 102, Ex. 1, Attach. # 17, Use and Occupancy Agreement.

Gorton II at ¶¶ 10-12; Ex. 5, The Permits.  In this respect, the Defendants reasonably relied upon the

Permit Process and the administering agencies' determinations as to what constituted "significant"

parkland in ascertaining whether section 4(f) applied to this mitigation program, as set forth in the

Rules and Regulations:

> Where Federal lands or other public land holdings (e.g. State forests) are administered
> under statutes permitting management for multiple uses, and, in fact, are managed for
> multiple uses, section 4(f) applies only to those portions of such lands which function
> for, or are designated in the plans of the administering agency as being for **significant**
> park, recreation, or wild life and waterfowl purposes.  **The determination as to which
> lands so function or are so designated, and the significance of those lands, shall be
> made by the officials having jurisdiction over the lands.  The Administration will
> review this determination to assure its reasonableness.**  The determination of
> significance shall apply to the entire area of such park, recreation, or wildlife and
> waterfowl refuge sites.

23 C.F.R. § 771.135(d) (emphasis added).

The impact then, and the degree of its significance upon the parkland, if any, shall be determined by

the "official having jurisdiction over the lands," which in our case is NYSDEC.  It was NYSDEC,

with the consultation of the Defendants, who, within the scope of the Permit Process, designated the

specific location for the wetland mitigation, avoiding any complications or interference with the

park's recreational use.  Such consideration or designation by NYSDEC that the area impacted by

the Wetland Mitigation lacked significance in terms of being a significant park or adversely

impacting on the recreational use of the Stewart State Forest deserves deference.  All that the

Defendants are required to do under these circumstances is review NYSDEC's determination to

assure reasonableness.  However, in our situation, the Defendants, assuming an extra role,

coordinated with NYSDEC to find the most appropriate and reasonable location, set standards to

minimize any harm during the construction phase, and ensured there was no interference with the

recreational use of the significant portion of Stewart State Forest.  Dkt. No. 102, Ex. 1 at Sections

V.A, VIII,  IX; Attach. # 17.[13]  Exploring all of the facets of "use" (*i.e.*, permanent, temporary and constructive) within the Permit Process, the Defendants' concomitant review of the CORP and NYSDEC's determinations assure their reasonableness, especially when they weighed their extra steps to guarantee and minimize any permanent impact.  Therefore, the determination that the Wetland Mitigation is not a "use" is not arbitrary, capricious, nor an abuse of discretion, and is in accordance with the law.  Moreover, Defendants' determinations neatly fall within a reasonable interpretation of the statute.  Accordingly, Plaintiffs' Motions for Reconsideration and/or Alteration of our Decision based upon facts the Court employed in assessing what constitutes a use is **denied**.

POINT III:
*Purple Milkweed*

Plaintiffs move this Court, pursuant to FED. R. CIV. P. 60(b)(2), (3), & 59(e), to reconsider *SPARC IV* because of newly discovered evidence and fraud.  The newly discovered evidence pertains to the discovery of the Purple Milkweed, which ranks as a rare species with an S2/S3 ranking by NYSDEC.  Dkt. No. 123, John W. Caffry, Esq. Aff., dated May 23, 2005, at ¶¶ 14 & 23.  When this Court issued *SPARC IV*, the facts suggested that there was only Common Milkweed in the area of the hayfield, which is contiguous to an existing wetland located within the Stewart State

---

[13]  The 4(f) Analysis reads in part as:

> The site of the proposed wetlands restoration is an active hayfield with limited wildlife habitat value, which is adjacent to an existing wetland.  See Att. 2.  The site for this work was selected in coordination between the NYSDOT, the NYSDEC, the United States Army Corps of Engineers, and the New York State Thruway Authority.  The search for a site to accomplish the mitigation required by state and federal wetlands regulators began in 1995 and examined all 9000 acres of the state land east and west of Drury Lane.  The site selected in Stewart State Forest does not impair any recreational uses of the Forest, and may serve to enhance those uses.  Site selection is the culmination of an exhaustive effort to achieve the federal Clean Water Act (and related state) objectives to avoid, minimize and mitigate potential degradation of the physical, chemical and biological integrity of the nation's waters.  Stewart State Forest, a multipurpose reforestation area, was established with this express purpose.

Dkt. No. 102, Ex. 1, Section V.A.

*-24-*

Forest, notwithstanding the postulation that the Purple Milkweed may exist.  Common Milkweed is

neither a threatened nor endangered species and this Court has repeatedly held, starting when the

endangered species issue was first raised with respect to the Plaintiffs' NEPA and SEQRA claims,[14]

that no known endangered species existed within Stewart State Forest.  *See SPARC I*, 225 F. Supp.

2d at 228 (finding that Stewart Buffer Lands is not a habitat for endangered species); *SPARC III*,

352 F.3d at 562 (affirming *SPARC I* with regard to NEPA and SEQRA findings).  Further, based

upon a NYSDEC memorandum, dated November 15, 2004,[15] which identified the Milkweed

thriving in this hayfield as a common variety, the Court, once again found that there was no

endangered species and, thus, no harm to be considered with respect to the Wetland Mitigation.

*SPARC IV*, 358 F. Supp. 2d at 87, n.5, & 100, n.16.

Thereafter, and unbeknownst to the Court, the Plaintiffs' expert began communicating with

NYSDEC's officials about the presence of the Purple Milkweed in this hayfield and discovered that

there is in fact Purple Milkweed present and it may be one of the largest population of the plant in

New York.[16]  Caffry Aff. at ¶¶ 21-23, 32, & 45-54; Ex. C.  Apparently an understandable error has

been exposed.  Based upon the sample which was provided to NYSDEC in November 2004, the

determination that the sample was Common Milkweed was correct.  Dkt. No. 123, Ex. C, Stephen

M. Young's lt., dated Mar. 4, 2005.  Now a different sample has been presented to this agency and,

---

[14]  Counts Two ,Three, and Four of the Plaintiffs' Amended Complaint allege that the Defendants violated the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) (NEPA) and New York's State Environmental Quality Review Act, N.Y. ENVTL. CONSERV. LAW art 8 (SEQRA) respectively.

[15]  The Court was presented with this memorandum at Oral Arguments.  *See SPARC IV*, 358 F. Supp. 2d at 86, n.5, Ct.'s Ex. 11.

[16]  After being presented with this memorandum at Oral Arguments, Plaintiffs began this review process. However, they did not notify the Court that such an endeavor had commenced nor did they at any time prior to the issuance of *SPARC IV* ask that any decision be held in abeyance pending an outcome to the Milkweed investigation.

without much dispute, Purple Milkweed does exist in this area of the Stewart State Forest.  We should be cognizant, however, that there is very little to distinguish Purple Milkweed from Common Milkweed except for "[f]ruits [which] are rarely produced, but when they appear, they are smooth follicles . . . perched on deflexed pedicels . . . [Otherwise,] [t]hese pods have projections on them like common milkweed."  Dkt. No. 123, Ex. B, NYSDEC Memo, dated Nov. 15, 2004; *SPARC IV*, 358 F. Supp. 2d at 86, n.5, Ct.'s Ex. 11 (quotation within the original memorandum).  Blurring this fine distinction further is the fact that, pursuant to a NYSDEC Permit, this hayfield is mowed several times a year, which invariably chops all of the Milkweed down to homogeneous portions; therefore, it is reasonable for the discrepancy to now appear.[17]  The parties agreed that this plant is not on either the federal or state endangered species list, but has a "threatened" status and is being reassessed by NYSDEC.  Caffry Aff. at ¶ 23.  At present, it has not been designated as an endangered species but, in essence, is eligible for such a listing.  Where the parties disagree is whether 4(f) is the proper review for issues pertaining to endangered or threatened species.

---

[17] The Court takes this moment to note that the Plaintiffs' suggestion that something underhanded or some misrepresentation had been committed by the Defendants is absurd.  Obviously, this is a matter of different samples being presented at different times to the agency having jurisdiction of this parkland which rendered different, yet correct, pronouncements each time.  The Defendants were not aware of the presence of the Purple Milkweed until the Plaintiffs' scientists engaged NYSDEC to reconsider its November 15, 2004 memorandum, which engagement occurred after *SPARC IV*.  To suggest that the Defendants had some duty to present this matter once the Plaintiffs brought it to their attention is similarly sophistry.  The Defendants have always taken the position throughout this entire litigation that endangered species is not a part of this 4(f) Analysis, since there is no "use" of the parkland, and the Purple Milkweed has not been deemed to be an endangered species, so their stance has not changed.  Moreover, the issue of endangered species, in the Defendants' view, was resolved when this Court granted judgment to them on the NEPA and SEQRA claims, which was affirmed by the Court of Appeals.  In the scheme of things, it is incumbent upon the Plaintiffs, who are seeking a reconsideration of our ruling based upon newly discovered evidence, not the Defendants, to bring this new revelation to the Court's attention.

This is not the first time that the Plaintiffs have subscribed an improper motive to the Defendants.  *See SPARC I*, 225 F. Supp. 2d 219, 232 (N.D.N.Y. 2002) ("Plaintiffs' allegation that Defendants' intentionally withheld the information is not supported by the record.").  Now, to pontificate and lay a nefarious motive template over the Defendants getting it wrong on the Purple Milkweed is nothing short of a distraction from the real issue, which is, now that it has been discovered, whether it is subject to a 4(f) review.  The Plaintiffs fail to gauge the appropriate temper and timbre of this issue and place too much significance and effort into this collateral discussion.

Plaintiffs argue that it does and Defendants state that such a review falls within the Wetland

Mitigation Permit Process.[18]

For the very reasons stated above in Point II, the new issue of the Purple Milkweed is not a

4(f) review.  *See supra* Part V.Point II (discussing applicability of 23 C.F.R. § 771.135(d)); *see also*

Dkt. No. 131, Defs.' Joint Mem. of Law, Attach. # 1, 4(f) Policy Paper, Question 22.[19]  Rather, the

existence of the Purple Milkweed falls within the scope of the Wetland Permit review.  With near

hyperbole, Plaintiffs ruminate that the Purple Milkweed will be decimated if the Wetland Mitigation

is allowed to continue.  Caffry Aff. at ¶¶ 23 & 52.  To this extent, the Defendants have responded

repeatedly – the last time on the record – that the Defendants, in order to avoid the possible

destruction of the Purple Milkweed, have adjusted and submitted a revised plan for the Wetland

Mitigation as a component of their application for modifications of the Wetland Permits to reflect

the thirty feet realignment of Drury Lane.  *See* Dkt. No. 131, Wm. Gorton Aff., dated May 16, 2005

(Gorton III), at ¶¶ 6-8.  The application for the modification reads, in relevant part, that "[t]hese

proposed modifications include a reduction of wetland fill by 3/4 acre (by eliminating wetland fill

west of Drury Lane) and re-configuration of an 11.3 acre wetland mitigation project on Barron Road

within Stewart State Forest land to avoid a protected plant species of special concern in NYS State

---

[18]  The parties have maintained these respective stances throughout the litigation.

[19]  This policy paper was issued by FHWA after *SPARC IV* and answers the question whether a 4(f) review is required for mitigation:

> Another example involves the enhancement, rehabilitation or creation of wetland within a park or other 4(f) resources as part or the mitigation for a transportation project's wetland impacts.  Where this work is consistent with the function of the existing park and considered an enhancement of the 4(f) resource by the official having jurisdiction, then Section 4(f) would not apply.  In this case the 4(f) land is not permanently incorporated into the transportation even though it is a part of the project as mitigation.  If activities funded with Title funds result in a substantial change in the purpose, function or change the ownership from a 4(f) resource to transportation, then Section 4(f) will apply.

http://environment.fhwa.dot.gov/projdev/4fpolicy.htm (Question 22).

[sic], purple milkweed." Gorton III, Ex. 1 (Notice of Complete Application). It is within this review that any threat of harm to this "threatened" plant species would be considered. The Permit Modifications are available for public review, and under the administrative process in place, the public, which includes the Plaintiffs, would have an opportunity to present public comments. It would be NYSDEC's responsibility to review and address whether any of the public comments regarding harm to a threatened plant species warrants further administrative review or action.[20] Gorton III at ¶ 8; Ex. 1, NYSDEC lt., dated Apr. 28, 2005, at p. 2 ("Accordingly, a decision is due within 90 days of the date of this notice unless a public hearing is held which may extend this time frame. If a public hearing is necessary, you will be notified.").

The Plaintiffs contend that failing to consider the plight of the Purple Milkweed during the Defendants' 4(f) Analysis is akin to ignoring the statute's preservationist purpose: "It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuge, and historic sites." 49 U.S.C. § 303(a). Plaintiffs' alarm of irreversible destruction of the Purple Milkweed is not supported by the facts before the Court. Much to the contrary, Defendants have reiterated that they will not bring harm to the Purple Milkweed and that its preservation is assured. Further confirmation of their protectionist's attitude toward the Purple Milkweed is illuminated by the fact that the Defendants have already sought a modification of their Wetland Mitigation Permits to avoid such demolition of this plant. In this context and under these assumptions, the government has

---

[20] The Plaintiffs have already fully engulfed themselves into the application process for the modification of the Wetland Mitigation Permits. Plaintiffs' experts have already espoused, at length, to NYSDEC various technical, environmental, and scientific reasons why the modification, as proposed, should not be granted. *See* Dkt. No. 132, Exs. B & C; Caffry Aff. at ¶¶ 16-19.

made "special effort" to preserve wildlife, and if put to the task of showing a prudent and feasible alternative to minimize harm to the plant, the Defendants have done so.  Gorton III at ¶ 7, Attach. # 4.  However, the Court agrees with the Defendants that it is the permit process by the very agency that has already considered this plant life to be rare, in which the public will have a say, to be the correct forum for its consideration.  Who better to address this issue than NYSDEC.

The clamor for a 4(f) review to trigger another round of public comments in light of the fact that public hearings will occur in the permit process seems nothing short of prolonging the process and making it more costly in the long run.  Considering that an obvious alternative to the destruction of the Purple Milkweed exists, that is, it will be preserved simply solves the issue.  As to this issue, nothing more can be done or expected.  Furthermore, it does appear that the Plaintiffs are unrelenting in their attempts to relitigate environmental review issues already resolved by this Court and affirmed by the Second Circuit.  *SPARC III*, 352 F.3d at 557.  In essence, the Plaintiffs wish for this Court to embrace their experts and substitute their considered opinions over the considered opinions of the Defendants as how to best address the Purple Milkweed population.  This is an impermissible desire:

> We have also made it clear that the role of a court in reviewing the sufficiency of an agency's consideration of environmental factors is a limited one, limited both by the time at which the decision was made and by the statute mandating review.  "Neither the statute nor its legislative history contemplates that a court should substitute its judgment for that of the agency as to the environmental consequences of its actions.

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 555 (1978) (quoting *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21 ( 1976)).[21]

---

[21] *Vermont Yankee Nuclear Power Corp*. also stands for the proposition that the record of an administrative determination must come to a close.

> Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated [and, we might add, the time the decision is judicially reviewed]. . . . If upon the coming down of the order litigants might demand

In the final analysis, NYSDEC and the CORP need to make their regulatory decisions, not the

Court.  As we have previously noted,

> When specialists express conflicting views, an agency must have discretion to rely on
> the reasonable opinions of its qualified experts even if, as an original matter, a court
> might find contrary views more persuasive.  It is neither for this Court nor the Plaintiffs
> to substitute its judgment for that of the experts who conducted the study or the
> Defendants who relied upon it.

*SPARC IV*, 358 F. Supp. 2d at 102 (citing, *inter alia*, *Marsh v. Oregon Natural Resources Council*,
490 U.S. 360, 378 (1989)).

Accordingly, Plaintiffs' Motions for Reconsideration and/or Alteration of our Decision on the basis

of fraud or new evidence is **denied**.

POINT IV:
*Other issues*

All of the other issues raised by the Plaintiffs in these Motions are without merit.  Most of

these issues, and some more than others, such as the secondary development as a constructive use,

were previously raised and decided by this Court.  *SPARC IV*, 358 F. Supp.2d at 103-05 (the court

invoking the doctrine of law of the case); *see also supra* Part III.B (stating that Rules 59 and 60

should not be used to relitigate or reargue).  In the context of the Motion for a Stay, Plaintiffs have

failed to establish a substantial likelihood of success on the merits or that there will be irreparable

harm.  The *status quo* of the Purple Milkweed remains intact and the public has access to the open

spaces during the pendency of any appeal, while, on the other hand, further delay of construction has

increased the cost substantially.  *See* Dkt. No. 131, Michael K. Schaeffer, Aff., dated May 16, 2005.

It is the Court's view that the public is being harmed by further delay of the Project which is adding,

---

rehearings as a matter of law because some new circumstance has arisen, some new trend has been
observed, or some new fact discovered, there would be little hope that the administrative process
could ever be consummated in an order that would not be subject to reopening.

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.* 435 U.S. at 554-55 (quoting *ICC v. Jersey
City,* 322 U.S. 503, 514 (1944) (alterations in original)).

at a minimal, a twenty percent increase to an already expensive public project.

Therefore, based upon all of the foregoing, it is hereby Ordered that the Plaintiffs' Motions for a Stay and Injunction Pending Appeal, Reconsideration of *SPARC IV*, and To Set Aside or Alter the Judgment (Dkt. Nos. 123 & 129) are **Denied**.[22]

IT IS SO ORDERED.

Date:   June 22, 2005
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

---

[22] Because we deny Plaintiffs' Motion for a Stay Pending Appeal, there is no need for us to consider their Application for a Waiver of the *Supersedeas* Bond.  *See, e.g.*, 20 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 307.11 (3d ed. 2005).